Filed 5/19/26  Yessian v. Garfield Beach CVS CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL YESSIAN et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>GARFIELD BEACH CVS, LLC., et al.,<br><br>Defendants and Respondents. | B343942<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV01544) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa Beaudet, Judge.  Affirmed.

Kisob Law Firm and Apemwoyah Kisob Alaric-Lorenzo for Plaintiffs and Appellants.

Payne & Fears, Daniel F. Fears, Andrew K. Haeffele, and Leilani E. Jones for Defendants and Respondents.

_____

Plaintiffs Michael Yessian and Mandi Martinez appeal from a judgment entered in favor of defendants Garfield Beach CVS, LLC (CVS) and CVS employee Deborah Padilla.  Yessian and Martinez alleged that Padilla falsely accused them of stealing at a CVS store.  At trial, plaintiffs presented claims for discrimination, defamation per se, and intentional infliction of emotional distress.  The jury returned a complete defense verdict.  Plaintiffs filed motions for judgment notwithstanding the verdict (JNOV) and for a new trial.  The trial court denied the motions.

On appeal, plaintiffs contend the trial judge erred by refusing to disqualify herself despite a financial conflict of interest.  They additionally assert the court erred by partially granting defendants' motion in limine based on the statute of limitations, thereby limiting the evidence available to prove the defamation claim; failing to give requested jury instructions; and denying plaintiffs' motions for JNOV and a new trial.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 15, 2019, plaintiffs visited a CVS store in Pomona, California.  Martinez asked store manager William Pineda if there was a restroom.  Pineda said the restroom was closed for cleaning.  Martinez left the store and waited for Yessian in their car.

Yessian asked employee Deborah Padilla whether she had seen his wife.  The parties disputed what was said next, but Yessian left after the brief exchange.  He returned a few moments later with Martinez.  Yessian and Martinez then spoke with Pineda and Padilla.  In a recorded exchange, Yessian said Padilla had accused him and Martinez of stealing.  Padilla denied accusing them of stealing.

2

In January 2020, plaintiffs filed suit against defendants. In March 2023, plaintiffs filed their operative third amended complaint (TAC), asserting claims for discrimination in violation of the Unruh Act, defamation per se, intentional infliction of emotional distress, and negligent hiring, supervision, or retention of an employee.

In addition to alleging that Padilla had falsely accused plaintiffs of shoplifting, the TAC alleged Pineda had also made a defamatory statement. The statement was contained in a CVS internal investigative report (the Salesforce Report). The TAC asserted: "Adam William Pineda, CVS' employee, told the store's District Manager, Quyen Diep, that Plaintiffs were return customers who were confirmed to have stolen from the store in the past."

In February 2023, the trial court granted defendants' motion for summary adjudication of plaintiffs' fourth cause of action for negligent hiring, training, supervision, and/or retention of an employee. On August 7, 2024, the parties proceeded to a jury trial on the remaining three causes of action: discrimination, defamation per se, and intentional infliction of emotional distress. The jury returned a defense verdict on all causes of action. The court entered judgment in defendants' favor.

Plaintiffs subsequently filed a JNOV motion and a motion for a new trial. In the JNOV motion, plaintiffs argued substantial evidence did not support the defamation per se verdict. In the new trial motion, plaintiffs argued that certain trial testimony constituted newly discovered evidence and surprise. They further contended the trial court erred in failing to instruct the jury on adoptive admissions (CACI No. 213), and coerced self-publication (CACI No. 1708), and in granting a

defense motion in limine that prevented plaintiffs from using the Salesforce Report statement as a basis for the defamation per se claim.  The trial court denied both motions.

Plaintiffs filed a timely notice of appeal.

**DISCUSSION**

**I.    Plaintiffs Do Not Establish Reversal Is Warranted Due to the Trial Judge's Decision Not to Disqualify Herself**

Plaintiffs assert that the trial judge's failure to recuse herself violated their due process rights and constituted structural error.  We conclude plaintiffs have forfeited any due process claim by failing to seek writ review of the order denying their statutory challenge to the judge and by failing to assert a due process claim in the trial court.  Further, even if not forfeited, plaintiffs have not established the exceptional circumstances required to support a due process claim based on judicial bias.

**A.    Background**

On July 24, 2020, the trial judge issued a minute order disclosing that she is the "trustee and sole beneficiary of a trust which owns 400 shares of stock that is valued at approximately $25,336 in [the] CVS Health Corporation, which the Court has been informed by counsel for Defendant is the parent company of CVS Pharmacy, Inc., the sole member of Defendant."  The trial judge stated she was not biased in favor or against any party as a result, and that "ownership of stock of a parent company is not a ground for recusal unless facts exist pursuant to which the parent could be made a party or a party intends to join the parent to the litigation."  Based on her review of the case and information provided by the parties on July 23, 2020, the judge

4

did not recuse herself.  The parties indicated they did not intend to join the parent company as a party in the action.

On August 19, 2020, the plaintiffs filed a challenge to the judge for cause pursuant to Code of Civil Procedure section 170.3, subdivision (c)(1),[1] on the ground that the judge was the trustee of a trust with shares in the parent company of the corporate defendant.  The challenge did not assert any due process or other non-statutory grounds.

On August 21, 2020, the trial court issued an "order striking statement of disqualification" on the ground that stock ownership in the parent company of a party is not disqualifying.[2] The order reminded the parties that review of the order was permitted only by a writ of mandate and provided the deadline to

---

[1]     All undesignated statutory references are to the Code of Civil Procedure.  Section 170.3, subdivision (c)(1), provides: "If a judge who should disqualify himself or herself refuses or fails to do so, any party may file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge."

On appeal, plaintiffs rely only on section 170.1, subdivision (a)(3)(A), which provides that a "judge shall be disqualified if any one or more of the following are true: [¶] . . . [¶] The judge has a financial interest in the subject matter in a proceeding or in a party to the proceeding."  In the trial court, they also cited section 170.1, subdivision (a)(6)(A)(iii), as a basis for disqualification, which states: "A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

[2]     See *Central Pacific Railway Co. v. Superior Court* (1931) 211 Cal. 706, 719–720 (*Central Pacific Railway Co.*).)

5

file a petition seeking a writ. Plaintiffs did not challenge the ruling by filing a petition for writ of mandate.

On August 7, 2024, the first day of trial, the trial court initiated a discussion with counsel, outside the presence of the jury, about her prior disclosure of interest in the trust's stock, the identity of Garfield Beach CVS, LLC, and its relationship with CVS Health Corporation. Plaintiffs' counsel did not say anything during this discussion. The trial court asked if "anybody need[ed] to address that issue any further," and plaintiffs' counsel responded in the negative.

### B. Forfeiture

As plaintiffs appear to concede, they have forfeited any claim of statutory error by failing to file a petition for a writ of mandate. "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate . . . ." (§ 170.3, subd. (d); *People v. Nieves* (2021) 11 Cal.5th 404, 498, fn. 13 [review only available through writ of mandate]; *People v. Peoples* (2016) 62 Cal.4th 718, 786 [writ of mandate exclusive means of review].) Plaintiffs assert, however, that their constitutional due process claim is not forfeited. We disagree.

Our high court has held that in "order to give maximum effect to the Legislature's clear intent that disqualification challenges be subject to prompt review by writ [citation], . . . a litigant may, and should, seek to resolve such issues by statutory means, and that his negligent failure to do so may constitute a forfeiture of his constitutional claim." (*People v. Brown* (1993) 6 Cal.4th 322, 336 (*Brown*).)

In *Brown*, "because defendant (i) sought writ relief as required by section 170.3(d) [citation], and (ii) writ relief was

6

summarily denied, he [could] assert on appeal, based on facts alleged in his unsuccessful disqualification motion under section 170.1, subdivision (a)(6)(C), a constitutional due process claim that the judge who presided over his hearing was not impartial."[3] (*Brown*, *supra*, 6 Cal.4th at p. 336.) Subsequently, our high court explained in *People v. Chatman* (2006) 38 Cal.4th 344, 363, that a defendant who raises a constitutionally based challenge asserting judicial bias in the trial court "may always 'assert on appeal a claim of denial of the due process right to an impartial judge.' [Citation.]"

Here, plaintiffs did not assert a constitutional claim in the trial court or seek writ review of the denial of their statutory challenge. We therefore agree with other courts concluding that, under such circumstances, a due process claim of judicial bias is forfeited. (*Rivera v. Hillard* (2023) 89 Cal.App.5th 964, 976, fn. 9 [finding "claim that judicial bias deprived [litigant] of due process" was forfeited "by failing to timely seek writ relief"]; *Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1339 [§ 170.3, subd. (d), did not bar appeal on constitutional grounds of judicial bias, but the failure to timely address the issue by statutory means forfeited constitutional claim]; *Roth v. Parker* (1997) 57 Cal.App.4th 542, 548–549 (*Roth*) [plaintiff

---

[3]     *Brown*, *supra*, 6 Cal.4th 322, concerned former section 170.1, subdivision (a)(6)(C), which stated: " '(a) A judge shall be disqualified if any one or more of the following is true: [¶] . . . [¶] (6) For any reason . . . (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Bias or prejudice towards a lawyer in the proceeding may be grounds for disqualification.' " (*Brown*, at p. 328, fn. 1.)

forfeited nonstatutory constitutional challenge by failing to seek writ review of order denying motion to recuse].)[4]

Plaintiffs' reliance on *People v. Panah* (2005) 35 Cal.4th 395, 445, footnote 16, is misplaced. In *Panah*, our high court noted: "We have observed that, notwithstanding the exclusive-remedy provision of Code of Civil Procedure section 170.3, 'a defendant may assert on appeal a claim of denial of the due process right to an impartial judge.' [Citation.]" (*Ibid.*) In *Panah*, however, the defendant did not appear to raise a due process argument on appeal. (*Ibid.*) The court therefore did not reach any relevant conclusion related to due process, judicial bias, and forfeiture. *Panah* does not call for a different result here. (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 ["cases are not authority for propositions not considered"].)

## C. No due process violation

Even if not forfeited, plaintiffs have not established any due process error requiring reversal. In the single paragraph in their appellate briefing devoted to this issue, plaintiffs argue that the facts require that we assume bias and impropriety. Not so.

Our high court has recognized "the exceptional nature of the cases in which it had been compelled to conclude that the due process clause had been violated by a judge's failure to recuse

---

[4] In *Roth*, the reviewing court concluded the appellant's constitutional claim of judicial bias was forfeited because she failed to seek writ review of the order denying her statutory motion to disqualify the trial judge. (*Roth, supra,* 57 Cal.App.4th at p. 548.) The court *also* concluded that appellant waived the issue by failing to raise it in the trial court and by raising it on appeal only in her reply brief. (*Id.* at pp. 548–549.) This alternative basis for the court's conclusion does not render the decision's other reasoning inapplicable here.

himself." (*People v. Freeman* (2010) 47 Cal.4th 993, 1004, citing *Caperton v. A.T. Massey Coal Co.* (2009) 556 U.S. 868, 887 [while showing of actual bias not required, cases requiring recusal based on due process present "extreme facts"].) "Less extreme cases—including those that involve the mere appearance, but not the probability, of bias—should be resolved under more expansive disqualification statutes and codes of judicial conduct." (*Freeman*, at p. 1005.)

Plaintiffs ignore this authority and instead rely on two cases, neither of which is persuasive because they do not concern a due process claim of judicial bias. Both also consider materially different facts. One concerned direct evidence of significant bias, illustrated by the judge's pre-judgment of the case. (*Webber v. Webber* (1948) 33 Cal.2d 153, 156, 162 [miscarriage of justice where trial court "indicated early in the presentation of plaintiff's case—and before having heard her evidence . . .—that he was not favorable to an award of alimony"].) The other involved a judge's interference with counsel's presentation of the case, resulting in counsel withdrawing a witness. (*Pratt v. Pratt* (1903) 141 Cal. 247, 250–252 [judge interrupted counsel's questioning of a witness and threatened to prejudge defendant unless the witness was withdrawn].) There were no such circumstances here.

This case does not present exceptional facts showing a probability of bias. The trial judge lacked any direct or immediate financial interest in the litigation. The judge was not required to recuse herself simply because the trust in which she had an interest owned stock in a parent company of the entity defendant. (*Central Pacific Railway Co.*, *supra*, 211 Cal. at pp. 719–720.) Even had they preserved the claim for review, plaintiffs proffer no facts that would meet the "exceptionally

9

stringent standard" for establishing a due process violation arising out of the judge's failure to recuse herself. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589 [it is " 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation"]; *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1031 ["the high court has required disqualification only for financial interests that it has characterized as ' " 'direct, personal, substantial, [and] pecuniary' " ' rather than 'slight.' "].)

## II. The Trial Court Did Not Err in Granting the Motion in Limine Based on the Statute of Limitations

Plaintiffs contend the trial court erred in granting defendants' motion in limine, which argued that the statute of limitations barred any defamation claim based on Pineda's purported statement in the Salesforce Report. (§ 340, subd. (c).) We find no error.

### A. Background

In June 2020, defendants produced the Salesforce Report in discovery. The report identified "user" Hillary Williams in connection with the following entry, dated December 2, 2019: "Spoke to DL Quyen Diep (QD) regarding this case 12/2/19: QD spoke to the SM Adam (William) Pineda and he stated that the 'customers' were return customers who have been confirmed to have stolen in the past. QD asked her SM what evidence there was and there wasn't anything sufficient."

In plaintiffs' March 2023 TAC, they added the following allegation in support of their defamation claim: "Adam William Pineda, CVS' employee, told the store's District Manager, Quyen Diep, that Plaintiffs were return customers who were confirmed to have stolen from the store in the past." In defendants' April

10

2023 answer to the TAC, they asserted the one-year statute of limitations under section 340, subdivision (c), as an affirmative defense.

On July 31, 2024, defendants filed a "Non-Statutory Motion for Judgment on the Pleadings or, in the Alternative, Motion in Limine to Bar Evidence of Defamation Cause of Action Barred by Statute of Limitations." Defendants argued that plaintiffs were aware of Pineda's statement in June 2020, and they were required to bring any defamation claim based on that statement within one year. Since plaintiffs did not assert a defamation claim based on the statement until March 2023, defendants argued the claim was time-barred.

The trial court agreed. It granted the motion in limine in part, excluding Pineda's statement for purposes of the defamation per se claim, but permitting its introduction to establish Pineda's discriminatory intent for plaintiffs' discrimination claim.

**B.    The statute of limitations barred any defamation claim based on the statement in the Salesforce Report**

"Generally, a trial court's ruling on an in limine motion is reviewed for abuse of discretion. [Citation.] However, when the issue is one of law, we exercise de novo review." (*Condon-Johnson & Associates, Inc. v. Sacramento Municipal Utility Dist.* (2007) 149 Cal.App.4th 1384, 1392.) "The application of the statute of limitations on undisputed facts is a purely legal question [citation]; accordingly, we review the lower [court's] rulings de novo." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

**i.    Timeliness and waiver**

Plaintiffs contend defendants "waived" their statute of

11

limitations defense by failing to raise it in their opposition to plaintiffs' motion for summary judgment, and by asserting it only on the eve of trial. Yet, plaintiffs concede that defendants asserted the statute of limitations in their answer as an affirmative defense. Plaintiffs fail to cite any legal authority suggesting anything more was needed to preserve the defense to be raised before or at trial. While plaintiffs argue in their reply on appeal that the "late" motion in limine deprived them of a "meaningful opportunity to marshal evidence, seek discovery, or request leave to amend," they do not explain why the pleading of the affirmative defense in the answer was legally insufficient to provide them adequate notice of that defense. We decline to develop plaintiffs' arguments for them. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.) An appealed order is presumed correct, and error must be affirmatively shown by citations to legal authority. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.) Plaintiffs have not established the trial court erred in considering the motion in limine.

Plaintiffs also contend the trial court erred in granting the motion in limine because defendants filed it after the trial court's own deadline. However, the trial court's order states it "discussed the timeliness issue with the parties and because the statute of limitations issue would have to be determined prior to the conclusion of the trial, the Court and the parties *agreed* to address the issue on a shortened briefing schedule prior to the start of trial." (Italics added.) Plaintiffs thus appear to have waived any objection that the motion in limine was untimely under the trial court's orders.

12

### ii. Plaintiffs failed to demonstrate the limitations period was tolled or extended
#### a. The discovery rule

Plaintiffs contend the discovery rule prevented the statute of limitations from beginning to run in June 2020. The argument lacks merit.

"An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*).) "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citation.]" (*Ibid.*) "[W]e look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Ibid.*) To "employ the discovery rule," a plaintiff must conduct a "reasonable investigation" and "plead" that "despite diligent investigation" he or she could not "have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Id.* at pp. 808, 809.)

Plaintiffs did not meet this requirement. Defendants produced the Salesforce Report in June 2020. Plaintiffs did not assert a claim based on the statement in the report until March 2023. They neither pled diligence in their TAC nor established diligent investigation. Plaintiffs assert it was not reasonably possible for them to discover the defamatory nature of the statement when they received it in June 2020 because of the "peak of the COVID 19 pandemic." This explanation is unsupported and facially unreasonable. The pandemic itself

13

cannot excuse plaintiffs' lengthy delay in acting on a statement produced in discovery during that time.

Plaintiffs also contend that Pineda's statement did not immediately appear defamatory. Essentially, they argue that because the statement that plaintiffs were confirmed to have stolen in the past may have been true—the parties stipulated at trial that both plaintiffs had previously been convicted of theft-related felonies—plaintiffs did not know the statement was defamatory until they confirmed in discovery that the CVS employees had no knowledge of plaintiffs' past criminal history.

Aside from undermining any defamation claim (*Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1553 [truth is a complete defense to defamation]), this argument is unavailing. The production of an obviously negative statement about plaintiffs gave them reason to discover a cause of action based on the report. It alerted them that, at a minimum, they should immediately investigate further. Plaintiffs contend the defamatory nature of the statement was only revealed in additional discovery, but neither below nor on appeal have they indicated when that discovery took place. They do not dispute defendants' assertion on appeal that they never took the depositions of Hillary Williams, the human resources employee identified on the top of the Salesforce Report as the "Case Owner," or Quyen Diep, who was the "QD" named in the allegedly defamatory statement.[5] Plaintiffs entirely fail to show they could not "have reasonably discovered facts supporting the

---

[5]     Defendants assert that plaintiffs never conducted "a single deposition during the four-year pendency of this litigation." Plaintiffs do not dispute this in their reply.

14

cause of action within the applicable statute of limitations period."  (*Fox*, *supra*, 35 Cal.4th at p. 809.)

### b.     Equitable estoppel

On appeal and in their motion for new trial, plaintiffs have asserted that equitable estoppel precluded defendants from asserting a statute of limitations defense in the motion in limine as to claims based on the Salesforce Report statement because defendants misled plaintiffs as to the true author of the statement.

Plaintiffs rely on *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 928, in which the court held that "equitable considerations may justify an estoppel where the libeled individual neither knew, nor through the exercise of reasonable diligence should have discovered, the identity of the authors."  In *Bernson*, the plaintiff was the subject of a critical report.  He was unable to bring suit for several years after the report's publication because he could not identify the authors.  The *Bernson* court answered the question of whether the statute of limitations should apply "when, as a result of the defendant's intentional concealment, the plaintiff is not only unaware of the defendant's identity, but is effectively precluded as a practical matter from ascertaining it through normal discovery procedures."  (*Id*. at p. 933.)

*Bernson* is inapposite.  Plaintiffs did not delay in amending their complaint to add claims based on the Salesforce Report because they did not know whom to name as a defendant.  Plaintiffs sought to hold *CVS* liable for the statement in the report, not any individual employee.  Although they originally thought Pineda made the statement, they did not name him as an individual defendant in the TAC, but only named Padilla.

15

That trial testimony suggested Pineda did *not* make the statement, and Williams's report was inaccurate, has no impact on the limitations period here. The statute of limitations barred plaintiffs' claim based on the report because plaintiffs failed to assert the claim against CVS within the limitations period. Moreover, in contrast to *Bernson*, there is no evidence that defendants engaged in wrongdoing or intentionally concealed information necessary for plaintiffs to bring a claim based on the report.

The trial court had no basis to conclude that defendants were equitably estopped from asserting a limitations defense as to any defamation claim based on the Salesforce Report.

### C. Republication

Plaintiffs additionally argue the alleged defamatory statement was republished after June 2020, thereby extending the limitations period. We disagree.

Each foreseeable republication of a defamatory statement may constitute a new publication and create a separate cause of action to reset the statute of limitations. (*Schneider v. United Airlines, Inc.* (1989) 208 Cal.App.3d 71, 77 ["The person defamed suffers injury each time the defamatory matter is published (or republished) and therefore a separate cause of action accrues for each publication."].)

In their opposition to the motion in limine, the only evidence of republication plaintiffs offered was their own repetition of the statements to third parties. They proffered no evidence that CVS republished the Salesforce Report statement. Plaintiffs contend the trial court should have afforded them additional time to gather evidence of republication, but they neither asked for a continuance in the trial court, nor explained

16

why they had not obtained such evidence in the year and several months following defendants' answer to the TAC.  The trial court did not abuse its discretion in rejecting the argument.

Plaintiffs contend their argument is supported by Williams's trial testimony that "other members of colleague relations have access to" the Salesforce system, which contained the Salesforce Report.  This was not evidence of republication.  That other employees had access to the report does not establish that the report was viewed or shared.  Indeed, Williams also testified that she did not write the notes with the intent that they would be shared.  She did not distribute the notes to anyone at CVS until the document was provided to CVS's attorneys in connection with plaintiffs' lawsuit.  There was no evidence of republication within the limitations period.

### D.    Coerced self-publication

Finally, plaintiffs contend they were coerced into repeating the defamatory statements, thereby republishing them during the limitations period.  In their surreply to the motion in limine, plaintiffs submitted declarations stating they had discussed the defamatory statement with others.  The trial court rejected this argument, finding that the TAC did not contain allegations of any such discussions.  Subsequently, the trial court denied plaintiffs' request for a jury instruction on coerced self-publication.

The trial court did not err.  "A plaintiff cannot manufacture a defamation cause of action by publishing the statements to third persons; the publication must be done by the defendant." (*Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1284.)  While publication by coercion is an exception to this rule, the exception is limited to a "narrow class of cases, usually where a plaintiff is compelled to republish the statements in aid of

17

disproving them," such as when a derogatory statement is in an employee's file and he or she must explain it to subsequent employers. (*Id.* at p. 1285; accord, *Beroiz v. Wahl* (2000) 84 Cal.App.4th 485, 497.)

The plaintiffs' declarations did not establish or even suggest coercion. Yessian's declaration stated he "discussed the statement made by Adam William Pineda . . . with Scotty Weaver and Andrew Steinline.[6] I discussed it with them on multiple occasions . . . . In short, because of the shocking allegations contained in the statement, I discussed it with other third parties within the relevant statute of limitations period . . . ." Martinez declared, "I recall that I have discussed the statement made by Adam William Pineda in paragraph 2 above with other individuals. I discussed it with them on multiple occasions ever since I became aware of it . . . . Since the allegations in the statement were very shocking to me, I discussed it with other third parties within the relevant statute of limitations period . . . ."

Neither declaration stated that plaintiffs were subject to any coercion when they shared the statements with third parties. Pineda's purported statement was in a CVS internal human resources investigation file. There was no evidence provided before or during trial indicating plaintiffs were compelled to repeat the statements. The court properly rejected the argument as a basis to extend the statute of limitations. Likewise, the court properly rejected plaintiffs' request for a jury instruction on coerced self-publication.

---

**6** The declaration did not provide any identifying or descriptive information about these individuals, other than their names.

18

## III. The Trial Court Did Not Prejudicially Err in Denying Plaintiffs' Request for an Adoptive Admission Instruction

Plaintiffs contend that the trial court erred in denying their request for an adoptive admission instruction under CACI No. 213. "The propriety of giving a jury instruction is reviewed de novo." (*Zannini v. Liker* (2022) 74 Cal.App.5th 610, 624 (*Zannini*).) We find no prejudicial error.

### A. Background

At trial, the following evidence was admitted regarding the incident at CVS. An audio recording from the store captured the conversation of Yessian, Martinez, Padilla, and Pineda:

> "Pineda: I never said you were stealing anything. You asked me, you said, can I use the restroom and I said—
>
> "Martinez: Okay, so—no, but this is what your employee told my husband on the way, so now I'm thinking that was why I was not allowed to use the bathroom, that—
>
> "Pineda: What did he tell her?
>
> "Yessian: She told me that—
>
> "Padilla: He asked—
>
> "Yessian: I said it, she asked me if I needed help. I said I was looking for my wife, and she said, is she a short Mexican girl with a big purse?
>
> "Pineda: Uh-huh.
>
> "Yessian: And she said, I said, yes, and she said, well, she took off with all her stuff and who knows what else.
>
> "Padilla: I didn't say—I said she took off.

"Yessian: Yes you did, and then she said, well, is there anything in your bag, because—

"Padilla: She had a basket.

"Yessian: Is there anything in your bag, because the police are on their way.  I said, fine, have the police on their way, because there's—why would there be anything like that, we haven't bought anything.

"Pineda: Uh-huh, right."

After further conversation, they continued:

"Pineda: . . . I didn't accuse you of stealing, and I don't think she—

"Martinez: No, I know—well, why would the police be called?  Why would she have to say, the police are going to be called, or they're on the way?

"Padilla: It wasn't for you.

"Pineda: Well, we all had a—there was another—there was an issue up here in the front, I don't know if you saw.

"Martinez: No, I didn't see.

"Pineda: There was a gentleman that had been kicked out for using heroin in our bathroom, and we were having an issue . . . ."

In her trial testimony, Padilla denied making the statement, "Is there anything in your bag because the police are on their way."  She explained that she could not respond to Yessian's accusation during the conversation because she was "always interrupted."

Plaintiffs requested the following jury instruction:

"[CACI No.] 213. Adoptive Admissions

"You have heard evidence that Michael Yessian made the following statement: 'And then she said that is there anything in your bag because the Police are on their way. I said, fine, have the Police on their way because there's—, why would there be anything in my bag because I haven't bought anything.' You may consider that statement as evidence against Deborah Padilla only if you find that all of the following conditions are true:

"1. The statement was made to Deborah Padilla or made in her presence;

"2. Deborah Padilla heard and understood the statement;

"3. Deborah Padilla would, under all the circumstances, naturally have denied the statement if she thought it was not true; AND,

"4. Deborah Padilla could have denied it but did not.

"If you decide that any of these conditions are not true, you must not consider for any purpose either the statement or Deborah Padilla's response. You must not consider this evidence against any other party."

Defendants objected to the instruction on relevance grounds. The trial court sustained the objection without prejudice.

In closing argument, plaintiffs argued that Padilla's lack of a response to Yessian's assertion that she had accused him of theft by asking if he had anything in his bag constituted an

21

adoptive admission that she had indeed made this defamatory statement.

## B.    Plaintiffs have not established prejudicial error

Plaintiffs contend the trial court erred by refusing to instruct the jury with CACI No. 213.  We need not decide whether the trial court erred because, even if it did, plaintiffs fail to establish that the error was prejudicial.

To warrant reversal, an "[i]nstructional error must be prejudicial.  This means it must be reasonably probable that the complaining party would have obtained a more favorable result in the absence of the error."  (*Zannini, supra,* 74 Cal.App.5th at p. 623.)  The purpose of the pattern instruction on adoptive admissions is to limit the jury's use of evidence that would otherwise be excluded as hearsay.  To that end, the instruction informs the jury that if it decides any of the listed conditions are not true, it must not consider the statement or the response for any purpose.  As noted in *People v. Carter* (2003) 30 Cal.4th 1166, 1198, an adoptive admission instruction is "largely a matter of common sense—silence in the face of an accusation is meaningful, and hence may be considered, only when the defendant has heard and understood the accusation and had an opportunity to reply."

Here, there was no hearsay objection to the evidence and no limiting instruction.  Plaintiffs were able to argue without restrictions about how the jury should interpret Yessian's statement and Padilla's response.  It is therefore far from clear that the instruction would have benefited plaintiffs.  Critically, the instruction did not direct the jury that it was *required* to consider Yessian's statement to be evidence against Padilla if it found the conditions true.  Instead, it merely permitted the jury

to do so, and prohibited them from considering the statement at all if any condition was not satisfied.  Plaintiffs fail to demonstrate a reasonable probability that had the trial court instructed the jury with CACI No. 213, plaintiffs would have obtained a more favorable result.

## IV.    The Trial Court Did Not Err in Denying Plaintiffs' JNOV Motion

Plaintiffs contend the trial court erred in denying their motion for JNOV because substantial evidence did not support the defamation per se verdicts.  We find no trial court error.

### A.    Background

In their motion for JNOV, plaintiffs relied on the store's audio recording of Martinez and Yessian confronting Pineda and Padilla.  As explained above, in the recording, Padilla denied accusing Yessian or Martinez of stealing.  At trial, Padilla also denied accusing plaintiffs of stealing or of suspecting that they had stolen anything.

Padilla agreed she told Yessian that Martinez "took off," but she repeatedly denied saying, "with all her stuff and who knows what else."  She explained she meant that Martinez "took off" from the cosmetics area of the store.  Padilla further denied saying, "Is there anything in your bag, because the police are on the way," and explained that Yessian did not have a bag but was pushing a shopping cart.

When asked about the police being on their way, Padilla testified: "I did not speak to [Yessian].  I'm thinking he's hearing it over our intercom.  I just go, it wasn't for her.  That's how—I didn't say the police were there.  He's saying the police were there.  And I go, it wasn't for you.  And I'm thinking he's meaning the alarm."  Padilla explained that there was a store alarm used

23

when someone did drugs in the store. She and Pineda both testified that CVS did not call the police about plaintiffs.

As to Martinez, the special verdict form asked: "Did Deborah Padilla make the following statement to a person other than Mandi Martinez: 'She took off with all her stuff and who knows what else'?" The jury answered "No."

As to Yessian, the special verdict form asked: "Did Deborah Padilla make the following statement to a person other than Michael Yessian: 'Is there anything in your bag, because the police are on their way'?" The jury answered, "No."

Pursuant to the instructions on the verdict forms, the jury did not answer any other questions about the defamation claims.

## B. Legal principles

Generally, a " ' "motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support." ' " (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 192.) However, " 'where the trier of fact has determined that the party with the burden of proof did not carry its burden and that party appeals, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment." [Citations.] Instead, "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*." [Citation.] Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citation.]" (*Estes v. Eaton Corp.* (2020) 51

24

Cal.App.5th 636, 651 (*Estes*).) This standard is " 'almost impossible' " for a "losing plaintiff to meet." (*Ibid.*)

" ' "On review of an order granting JNOV, we ' "must resolve any conflict in the evidence and draw all reasonable inferences therefrom in favor of the jury's verdict." ' " ' " (*Lurner v. American Golf Corp.* (2023) 97 Cal.App.5th 121, 132 (*Lurner*).)

To prevail on a claim for defamation per se, plaintiffs had to establish that there was " '(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a tendency to injure or causes special damage.' [Citation.]" (*Briganti v. Chow* (2019) 42 Cal.App.5th 504, 509.)

## C. The evidence did not compel a finding in favor of the plaintiffs as a matter of law[7]

The evidence did not compel a finding in plaintiffs' favor as a matter of law. (*Estes*, *supra*, 51 Cal.App.5th at p. 651.) Indeed, substantial evidence supported the verdict. Padilla repeatedly denied making the asserted defamatory statements, both at the time of the incident and at trial. Her testimony was sufficient to support the jury's conclusion that she did not, in fact, make the statements. (*People v. Young* (2005) 34 Cal.4th 1149, 1181 ["unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction"].) As a result, plaintiffs' contrary testimony was not "uncontradicted and unimpeached." Plaintiffs urge us to consider

_____

[7] As defendants point out, plaintiffs fail to recite the evidence in support of the jury's verdicts. On that basis alone, we may deem any error waived. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) However, we exercise our discretion to consider plaintiffs' argument on the merits. (*Burch v. CertainTeed Corp.* (2019) 34 Cal.App.5th 341, 349.)

testimony that they assert shows Padilla was not credible. However, we do not revisit the jury's credibility determinations, nor was the trial court permitted to do so. (*Lurner*, *supra*, 97 Cal.App.5th at pp. 132–133.)

Plaintiffs did not establish they were entitled to JNOV.[8]

## V. The Trial Court Did Not Abuse Its Discretion in Denying Plaintiffs' Motion for New Trial

Finally, plaintiffs argue the trial court erred in denying their motion for new trial. We have already addressed several of the grounds asserted in the motion and have rejected plaintiffs' claims that the trial court erred.[9] However, plaintiffs also contend they were entitled to a new trial based on surprise and newly discovered evidence due to Williams's trial testimony. (§ 657, subds. 3 & 4.) The trial court did not abuse its discretion

---

[8] We need not address plaintiffs' arguments regarding other elements of the defamation claim as there was sufficient evidence to support the jury's dispositive findings.

[9] Plaintiffs argue they were entitled to a new trial because defendants' act of raising the statute of limitations in a motion in limine on the eve of trial constituted surprise, and the motion in limine was barred by equitable estoppel. For the reasons set forth in our discussion of the trial court's order granting the motion in limine, we find no abuse of discretion in the trial court's order denying the motion for new trial on those grounds. Plaintiffs additionally assert that they were entitled to a new trial based on "[i]rregularity in the proceedings" and "[e]rror in law" due to the trial court's failure to instruct the jury on adoptive admissions and coerced self-publication. (§ 657, subds. 1 & 7.) We have addressed the substance of these arguments above and, for the same reasons, conclude the trial court did not err in denying the motion for new trial based on claimed instructional error.

26

in denying the motion.

### A. Legal principles

Section 657 sets forth the circumstances permitting a court to grant a motion for a new trial.  With respect to Williams's testimony, the plaintiffs relied on two: "Accident or surprise, which ordinary prudence could not have guarded against" (*id.*, subd. (3)); and "Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial" (*id.*, subd. (4)).

We review the denial of a motion for a new trial for abuse of discretion.  (*Zirpel v. Alki David Productions, Inc.* (2023) 93 Cal.App.5th 563, 573.)  "In doing so, we review the entire record independently to determine whether any alleged error occurred, and if so, whether there was resulting prejudice."  (*Ibid.*)[10]

### B. Discussion

At trial, Williams, the human resources employee listed as the "Case Owner" of the Salesforce Report, testified that the report reflected her notes, including the statement attributed to Pineda: "Adam William Pineda, CVS employee, told the store's District Manager, Quyen Diep, that Plaintiffs were return

---

[10]    Defendants argue the trial court was required to deny the motion as to the first, third, and fourth subdivisions of section 657 because plaintiffs failed to file affidavits in support of those grounds.  (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 336.)  However, plaintiffs' grounds for a new trial under subdivisions 3 and 4 are based on Williams's trial testimony and, under subdivision 1, on the trial court's rejection of requested jury instructions.  The facts relevant to these grounds are in the record.  We thus decline to affirm the denial of the motion based solely on plaintiffs' failure to file affidavits.

customers who were confirmed to have stolen from the store in the past." However, Williams also testified: "No one ever told me they were confirmed or suspected shoplifters. These were my rough notes that I put together that I did not share with anybody." She said the notes were "overstated" and "preliminary." She further testified that the note was based on what she had learned from Diep.

When CVS deposed Pineda and asked him about the statement, he testified: "If that is what I reported, then I'm assuming that's accurate." But, at trial, Pineda denied making the statement attributed to him in the Salesforce Report. Diep also testified that he did not recall Pineda making the statement, but he did recall speaking with Pineda about the incident and relaying what he learned to Williams.

Plaintiffs asserted that Williams's testimony entitled them to a new trial based on "[a]ccident or surprise, which ordinary prudence could not have guarded against" and "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." (§ 657, subds. 3 & 4.)

We conclude the trial court properly rejected plaintiffs' argument for two reasons. First, to warrant a new trial, any surprise must detrimentally impact the party moving for new trial. (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 305 (*McCoy*).) Likewise, new evidence justifies a new trial only if that evidence is material. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1192 (*Wall Street Network*).) With respect to the defamation claim, any surprise or new evidence regarding which employee made the statement in the Salesforce Report was neither material nor

prejudicial because any defamation claim against CVS based on the statement was barred by the statute of limitations.

Second, even if the statement was relevant to plaintiffs' other claims, they failed to show they were unable "to prevent or guard against [any surprise] by ordinary prudence," (*McCoy*, *supra*, 216 Cal.App.4th at p. 305), or that they exercised reasonable diligence in discovering the evidence (*Wall Street Network*, *supra*, 164 Cal.App.4th at p. 1192). When deposed, Pineda's recollection of the incident was vague. Yet, plaintiffs admit that after Pineda's deposition testimony about the statement, they did not seek further discovery about it. The document containing the statement identified two other individuals, Williams and Diep. Indeed, the document itself reflected that Williams was the "user" who had gathered the information reflected in the report. The record does not indicate that plaintiffs attempted to depose either Williams or Diep.

"[T]he party seeking relief has the burden to prove that he exercised reasonable diligence to discover and produce the evidence at trial. If he does not make this showing, the motion must be denied. Moreover, a general averment of diligence is insufficient. The moving party must state the particular acts or circumstances which establish diligence." (*In re Marriage of Liu* (1987) 197 Cal.App.3d 143, 153–154.) There is no such evidence of diligence in the record here. In addition, " '[i]t is well settled that a party's right to a new trial upon the ground of surprise is waived if the alleged surprise is not called to the court's attention by a motion for a continuance or other relief. [Citations.]' " (*Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 503.) Plaintiffs made no such request here.

Plaintiffs further failed to provide any evidence to support their claim that defendants concealed the author of the statement or intentionally misled plaintiffs.  At most, they point to briefing defendants submitted in opposition to summary judgment suggesting that defendants also believed Pineda made the statement reflected in the report.

The trial court did not abuse its discretion in denying a new trial based on surprise or newly discovered evidence.

## DISPOSITION

The judgment and orders denying the motions for judgment notwithstanding the verdict and a new trial are affirmed. Defendants are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

30